[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were mated on April 28, 1984 in New Fairfield, Connecticut. By complaint dated October 31, 2000 the Wife instituted this action claiming a dissolution of marriage, alimony, an equitable distribution of the property, counsel fees, and other relief as law and equity might provide. The Husband filed and Answer and Cross Complaint dated November 27, 2000 claiming a dissolution of the marriage, an equitable division of the property and such other equitable relief as to which he may be entitled.
No children were born issue of this marriage.
The Husband is age 60 and in good health. The Husband testified that he has several medical conditions, but none appear to have any impact on his life at this time. He works long hours, he plays golf and he travels extensively. Sometime in the future his quality of life may be affected, but that would be speculation. No evidence was presented to the court of any impact those conditions are having now or may have in the future.
The Wife is age 44 and in excellent health.
The parties met in 1980 when the Wife was hired by the Husband to work as a secretary in his Danbury Accounting firm. At that time the Husband was mated to his first wife. A relationship developed between the Husband and the Wife while the Husband was married. The Husband's first marriage was dissolved in September, 1983 after a contested trial.
At that trial, the Husband's income and assets were at question. The Husband was claiming earnings of approximately $50,000 per year on his financial affidavits. He first valued his business at $2,500.00. After discovery and an expert was hired by the then wife, the Husband valued his business at $250,000.00. Orders were entered at the dissolution inconsistent with the Husband's statements as to his earnings. The orders were appealed by the Husband. The orders were affirmed by the Appellate Court (Caracansi v. Caracansi, 4 Conn. App. 645, 1985) with the following finding: "The Husband's earnings were a source of factual dispute, but according to the Wife's accountant, may have been approximately $104,000.00." (Id., at page 647). On the Husband's October, 1985 financial affidavit besides his business and the business real property, he lists minimal assets, effectively equal to the assets that the Wife brought into this 18 year marriage.
In this case, the past is repeating. The Husband's earnings and the values of his assets are again in dispute.
The Husband claims that his business is worth $750,000.00 and that his CT Page 7476 annual income from the business is $124,560.00 per his financial affidavit dated June 6, 2002. The Husband testified that an additional $25,000.00 should be added to his annual income due to expenses which his company pays on his behalf
The Wife hired an expert to evaluate the business of the Husband. The evaluation (Exhibit Number #79) places a value on the business of $850,000.00 and articulated that the Husband's annual income for 2001 was $241,083.00 (and $297,273.00 in 2000). This court finds that the evaluation and testimony of the expert business appraiser are credible and adopts those figures as the basis for all orders entered in this proceeding.
Both parties have a different view as to the contributions the Wife made to the Husband's business. The Wife claims that she was an integral part of the business. She worked at the business until 1990 when she began to babysit for the Husband's grand children. However, she still continued to do work for the business from home and continued to be paid her salary. Throughout the marriage, the Wife attended numerous social functions with the Husband, both at their home and outside the home. The Husband testified that the social side of his business was as important as the professional side, in order to keep and acquire clients. The Husband claims that the Wife's contributions were little to none. He testified that the business was his before the marriage and it's growth is all attributable to him and him alone.
Both parties also have a different view as to the cause of the breakdown of the marriage. The Husband claims that the Wife began to complain about attending his business social functions and that they physically and mentally grew apart. The Wife claims that the Husband's affair with their best friend was the cause of the breakdown. As with most contested divorce cases, the truth lies somewhere in the middle. The Husband's inability to be accurate as to his financial situation, casts doubt on his credibility generally. Therefore, the court finds that the affair of the Husband with the best friend was a substantial factor in the breakdown of the marriage.
There are seven parcels of real estate that the parties own either jointly or individually and the Husband's business which the parties disagree upon the value. Therefore, this court shall make the following findings of values:
1. HUSBAND'S ACCOUNTING BUSINESS
Pursuant to Exhibit #79, the business evaluation, the value of the Husband's business today is $850,000.00. However, the Husband owned that CT Page 7477 business prior to the marriage. The value placed on the business at the time of the Husband's first divorce was $250,000.00. Therefore, the court finds the value of the business to be $600,000.00.
2. HUSBAND'S BUSINESS PROPERTY — 77 NORTH STREET, DANBURY
Pursuant to Exhibits #59 and #60, the value of the property is $350,000.00. However, the Husband owned this property prior to the marriage. At that time the property was valued at $156,000.00 with a mortgage of $119,000.00. Therefore, the Husband's equity in the property was $37,000.00. The mortgage was paid off during the course of this marriage. Therefore, the court finds the value of the property to be $313,000.00.
3. PROPERTY LOCATED AT 2 STRATTON PLACE, DANBURY
Pursuant to Exhibits #59 and 60, the value of the property is $200,000.00 with a mortgage in the amount of $133,535.00.
4. PROPERTY LOCATED AT 34 MANCHESTER DRIVE, POUGHKEEPSIE, NEW YORK
Pursuant to Exhibit #33, the value of this business property of the Husband is $160,000.00 with a mortgage on this property of $34,292.00.
5. PROPERTY LOCATED AT 155 BARCLEY COMMONS, DANBURY
Pursuant to Exhibit #40 and the testimony of the appraiser, the value of the property with the second garage is $269,900.00 with a mortgage on this property of $46,000.00.
6. PROPERTY LOCATED AT 902 MOSS COVE, FRIPP ISLAND, S.C.
Pursuant to Exhibit #31, the value of this property is $240,000.00. There is no mortgage on this property.
7. PROPERTY LOCATED AS LOT, TALL PINES, FRIPP ISLAND, S.C.
Pursuant to Exhibit #33, the value of this property is $65,000.00. There is no mortgage on this property.
8. BEAUFORT DEVELOPMENT, INC. PROPERTY IN NEW YORK
Both parties agree that the value of this property is $225,000.00, therefore, the court shall adopt this valuation as its own.
The Wife filed a Motion for Contempt in regards to pendente lite orders CT Page 7478 entered on February 19, 2002. The Husband was ordered to stop withholding $15.00 per week from the Wife's pay check. He continued to do so contrary to the order. Therefore, having knowledge of the order, the ability to comply with the order, he willfully disregarded the order, the Husband is in contempt of the court order and ordered to reimburse the Wife $15.00 per week for the weeks the Husband continued to withhold from the Wife's check. This reimbursement shall be from the Husband's share of the distribution of the assets and shall be completed within 30 days from the date of this decree.
The Court finds that residence requirements have been satisfied and neither party has been the recipient of public assistance. The Court further finds that the marriage has broken down irretrievably. All pertinent criteria outlined in Chapter 815j of the General Statutes were considered by the court in the entry of the following orders as well as the evidence, testimony and claims of law made by the parties:
ORDERS:
DISSOLUTION OF MARRIAGE
A decree dissolving the marriage on the grounds of irretrievable breakdown shall enter on June 17, 2002.
ALIMONY
The Husband shall pay to the Wife periodic alimony of $1,000.00 per week for the term of 5 years, non-modifiable as to term unless sooner terminated by the death of either party, the Wife's remarriage, or the Wife's cohabitation as defined by statute.
The Husband's sale of his business and/or his retirement shall not constitute a substantial change in circumstances for purposes of a modification of alimony.
MEDICAL INSURANCE — WIFE
The Husband shall maintain, at his sole expense, the present medical/dental insurance for the Wife for as long as he is obligated to pay alimony. If the COBRA benefits from the present policy of insurance are not able to be extended for the term of the alimony, then the Husband shall acquire comparable insurance for the Wife at his sole expense. If, however, the Wife is employed and insurance is available to her through that employment, and that insurance is comparable to and less expensive then the COBRA insurance, then the Husband shall monthly reimburse the Wife for the cost of that insurance. The Wife shall monthly provide to CT Page 7479 the Husband the proof of the cost of that insurance.
LIFE INSURANCE
The Husband shall maintain his present Life Insurance policy with AICPA in the amount of $400,000.00 with the Wife as beneficiary for as long as he is obligated to pay alimony. Each year (on or before April 15th) the Husband shall provide to the Wife proof that said policy is in place with the terms directed herein.
PERSONAL PROPERTY
Each party shall retain the personal property presently under their control with the following exceptions: (1) The Husband shall return to the Wife, within 30 days of the date of this decree, the 3 articles of art which he removed from the Barcley Condominium; and (2) The Wife shall retain all the personal property located in the South Carolina property with the exception of the Husband's clothing, personal items and any photographs located therein of his children and grandchildren. The Wife shall neatly and properly box the Husband's items and forward those items to him by UPS at her cost, within three months from the date of this decree.
REAL PROPERTY
The real property is hereby divided as follows. Both parties shall, within 30 days of the date of the decree, sign all necessary documents to effectuate these orders. If there is a mortgage on the property, the party who obtains the property shall indemnify and hold the other harmless in regards to any such mortgage and shall within 1 year from the date of this decree refinance the mortgage on that property so as to remove the other's name from any existing mortgage.
The Wife shall have exclusive use, possession and title to the following properties:
1. 155 Barcley Commons together with the second garage;
2. 902 Moss Cove, Fripp Island, S.C.;
3. Lot at Tall Pines, Fripp Island, S.C.
The Husband shall have exclusive use, possession and title to the following properties:
1. 77 North Street, Danbury, Connecticut; CT Page 7480
2. 2 Stratton Place, Danbury, Connecticut;
3. 34 Manchester Road, Poughkeepsie, NY;
4. Beaufort Development, Inc property in NY.
DIVISION OF DEBTS
Except as otherwise provided herein, the Husband shall be responsible for the debts on his financial affidavit and the Wife shall be responsible for the debts on her financial affidavit. Further, the Husband shall pay to the Wife, within 30 days from the date of this decree and from his share of the division of the assets, the following:
1. $27,000.00 to reimburse the Wife for her attorneys' fees;
2. $14,255.00 to reimburse the Wife for taxes due on her individually filed tax returns for 2000 and 2001;
3. $10,000.00 for the cost of the evaluation of the Husband's business.
HUSBAND'S BUSINESS
The Husband shall retain his businesses free and clear of any claim by the Wife. The Husband shall within 90 days from the date of this decree, remove the Wife as a trustee of the Caracansi Company 401K Plan. Further, the Husband shall indemnify and hold the Wife harmless against any liabilities, claims or demands in connection with the Wife's position as a co-trustee of said 401K Plan, her position as an employee of Caracansi Company; and any liabilities for said company.
401K AND IRA ACCOUNTS
The parties shall divide their 401K and IRA accounts as follows:
The Wife shall retain her IRA with Fidelity and her 401K with Caracansi 
Company in the total amount of $39,515.00.
The Husband shall retain his 401K with Nathan Lewis in the amount of $79,708.00. The parties shall equally divide, within 90 days of the date of this decree, the Husband's IRA with Nathan Lewis in the total amount of $23,561.00. In the event that a QRDO is necessary to divide this account, the cost of preparation of the necessary document shall be shared equally by the parties. The Superior Court shall retain jurisdiction over the account until it is distributed between the parties CT Page 7481 and to resolve any disputes which may arise with regard to the preparation and execution of the QDRO.
BANK ACCOUNTS, STOCK ACCOUNTS, BONDS, MUTUAL ACCOUNTS AND OUTSTANDINGLOANS
The parties have the following accounts and outstanding loans in the approximate amounts as stated on their financial affidavits, which they shall divide equally within 90 days of the date of this decree:
 Prudential Account $ 73,538.00 Kemper Muni $ 42,332.00 Franklin Funds $ 69,490.00 Prudential Bache $ 61,895.00 Krupp $ 9,950.00 Ameritrade $ 145.00 New Mil Bank $ 4,026.00 Regions Bank CD $100,000.00 Regions Bank Account $ 1,500.00 Danbury Savings Bank $ 2,060.00 Loan to R. Antonella $ 10,000.00 ------------- Apprx Total $374,936.00
Due to the many vacations, trips and gifts which the Husband bought during the pendency of this action in contradiction of the automatic orders, the Husband shall transfer $8,666.00 to the Wife within 90 days from the date of the decree from the Prudential Account not listed above. This account had been used, pursuant to a court order, to provide the Wife with money to purchase a car.
ATTORNEY FEES
Except as otherwise provided herein, the parties shall each be solely responsible for their own attorney fees.
TAX RETURNS
In the past, the parties filed joint income tax returns. If there is any liability, cost, or penalty associated with the previous filings of joint income tax returns, the party responsible for the penalty shall be solely responsible for same and shall hold the other party harmless from same.
MOTOR VEHICLES
The Wife shall be entitled to retain her motor vehicle, the 1999 BMW and CT Page 7482 be solely responsible for the loan on said motor vehicle. She shall indemnify and hold the Husband harmless in regards to same. The Wife shall be entitled to the 1996 Jeep and the Husband shall sign all necessary documents to effectuate this order within 3 months from the date of this decree.
The Husband shall be entitled to retain his motor vehicle, the 2002 Audi, and be solely responsible for the loan on said vehicle. He shall indemnify and hold the Wife harmless for same.
The Husband shall be entitled to the 1975 MG. The Wife shall sign all necessary documents to effectuate this order. The Husband shall remove the MG from the South Carolina property within 3 months from the date of this decree. If he fails to remove said vehicle by said time, he will be considered to have abandoned said car and it shall become the property of the Wife and thereafter the Husband shall sign the necessary documents to then transfer the MG to the Wife.
MISCELLANEOUS
Each party shall sign any necessary documents to effectuate the orders contained herein.
 ___________________ FRANKEL, J.